GOTHARD, Judge.
This is an appeal from a preliminary injunction and sequestration by the lessee of an industrial site, and by the owner of a sequestered movable. We affirm.
The Azby Fund (“Azby”) was the owner of a large tract of property situated at 1101 Destrehan Avenue, on the Harvey Canal. It leased the land to Strike-N-Arc (“SNA”), a company which operated a fabrication business in connection with the oil industry. SNA had occupied the site since 1984, first as a sublessee and from 1988 on as a lessee.
The lease in force was to expire on February 28, 1992. SNA notified Azby by letter dated December 26, 1991 that it intended to cease operations because of a decreased volume of business and would not renew the lease, but wished a one or two months extension.
Sometime during January, 1992, Michael S. Liebaert, managing director of Azby, belatedly read an appraisal of the leased property by William G. Wiegand, dated October 22, 1991. He became alarmed by comments in the report suggesting the possibility of contamination of the soil and subsoil and the presence of hazardous materials and recommending an environmental survey by qualified personnel. Wie-gand had appraised the property several times and only once before had raised the question of environmental damage. After visiting the site with David Buras, president of SNA, Liebaert consulted Azby’s counsel, who hired the engineering firm of Walk, Haydel & Associates, Inc. to conduct an initial inspection. Upon receiving their report of January 29 and 30, 1992 visits to the site, on February 10 Liebaert and counsel called at the SNA office and told David *304 Buras and his father, Edward Buras, Sr., that they would file suit unless they received assurances that the lessee would agree to bear the substantial costs which might be incurred to clean up the site and restore it to its previous condition. That same day, interpreting Mr. Buras, Sr.’s response as adverse to any amicable resolution of the problem, counsel for the plaintiff filed suit seeking a temporary restraining order and in addition a writ of sequestration. The suit alleged that SNA had breached the lease by failing to maintain the premises and by contaminating the site. The temporary restraining order enjoined and prohibited Strike-N-Arc from “degrading or contaminating environmentally any further the premises leased from plaintiff, The Azby Fund” and from “withdrawing, donating, transferring, or encumbering any of its assets and/or property located on the demised premises” pending a hearing of the motion for preliminary injunction. The sequestration order was granted, directing sequestration of “the movables located at the leased premises.”
SNA filed a rule to dismiss the TRO and sequestration. Shell Offshore, Inc. and Chevron, U.S.A. intervened, also seeking a dissolution of the sequestration, as two movable buildings under contract from Shell and a caisson being fabricated for Chevron were included in the sequestration order.
After a hearing on March 19, 1992-, the court signed a judgment granting the preliminary injunction in favor of Azby. The court ordered the sequestration lifted from the Chevron caisson and from the concrete building owned by Shell; however, it ordered that the sequestration order would remain in effect on the Shell utility module. Shell later bonded out the module. Both Strike-N-Arc and Shell have taken devolu-tive appeals.
The issues raised by SNA are: 1) whether Azby’s suit was premature because Azby did not place SNA in default and the lease had not yet expired; 2) whether the sequestration was issued on facts showing that SNA intended to move or conceal assets; and 3) whether the plaintiff had established irreparable harm by a preponderance of the evidence, justifying issuance of a preliminary injunction. Shell asks this court to consider whether the sequestration and preliminary injunction were overly broad and excessive in light of the evidence and nature of the remedy sought.

Prematurity

The lease between the parties required a thirty day notice in writing of any default in performance by the lessee. It is undisputed that no written notice was given.
SNA’s position is that its alleged default was a passive breach, which required its being put in default before Azby could file suit. The court found, to the contrary, that SNA was in active default. Where there is an active breach of contract the law does not require a putting in default.
In this case, the petition alleged that SNA not only had failed to keep its obligation to keep the leased property in the same order as received but also had contaminated the premises:
“Strike-N-Arc negligently maintained the demised premises and negligently caused to be released into the land and environment pollutants and contaminants.”
We agree with the trial judge that the alleged breach was an active breach, requiring no putting in default. Furthermore, SNA had been put on notice that Azby was concerned about contamination on at least three occasions in late January. As noted above Michael Liebaert had walked through the property with an environmental engineer and David Buras. On a second visit Liebaert discussed with Ed Buras, David’s father and an owner of the company, how SNA intended to dispose of a large quantity of sand remnants from sandblasting. Later in January, David Bu-ras toured the site with Eugene Joanen, a second environmental scientist, assigned by Azby’s retained engineering firm to make an initial environmental assessment.

Preliminary Injunction

A succinct summary of the jurisprudence on preliminary injunction appears in *305 Franz v. Cormier, 579 So.2d 1201 (La.App. 5 Cir.1991), at 1202 and 1203:
To obtain a preliminary injunction the moving party must show the damage he will suffer may be irreparable if the injunction does not issue, that he is entitled to the relief sought, and must make a prima facie showing that he will prevail on the merits of the case. General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La.1979). Because an applicant for a preliminary injunction' need make only a prima facie showing, less proof is required that in an ordinary proceeding for a permanent injunction. Hailey v. Panno, 472 So.2d 97 (La.App. 5 Cir.1985).
A preliminary injunction is an interlocutory procedural device designed to preserve the existing status pending a trial of the issues on the merits of .the case. (Emphasis added.) Federal Nat. Mortg. Ass’n v. O’Donnell, 446 So.2d 395 (La.App. 5 Cir.1984). The trial judge has great discretion to grant or deny the relief. Id.
Irreparable injury means the moving party cannot be adequately compensated in money damages for his injury or suffers injuries which cannot be measured by pecuniary standards. Bagert v. Goldsmith, 504 So.2d 648 (La.App. 4 Cir.1987); McSwain v. Bryant, 503 So.2d 605 (La.App. 4 Cir.1987); Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981).
If a judgment would be valueless because of insolvency of the judgment debtor or other reasons, injunctive relief is proper. Ciambotti v. Decatur-St. Louis, Lupin, Properties Ventures, 533 So.2d 1352 (La.App. 3 Cir.1988)....
The preliminary injunction was issued after a full hearing, with numerous exhibits introduced into evidence by both sides.
The landowner’s environmental scientist, Joanen, testified at length regarding his visual observations of the site. His primary concern was the sandblasting area, where he estimated that roughly 1,000 cubic yards of sand would have to be removed and disposed of in accordance with Department of Environmental Quality (“DEQ”) guidelines. That area contained paint spills and painting oversprays which were suspected to be lead-based. Diesel fuel was found on surface soils near diesel tanks.
John Koury, former employee of the DEQ, with thirty-two years of experience in environmental engineering, had been retained by SNA to determine its responsibilities, if any. He was not called to testify by the defendants, but the plaintiffs introduced his deposition testimony. Koury conferred with Azby’s attorneys and Walk, Haydel engineers and then walked through the site with Joanen to locate potential hazards and order sampling. The results of the sampling were not available at the time of the hearing. He agreed with Joan-en that the sandblasting area presented the greatest potential for contamination, but his concern was not so great as that of the plaintiff’s engineers. However, he stated:
... Whether it’s contaminated or uncontaminated, before you can remove it, even if it’s going to your own property, as an environmental consultant, I must know the condition of that sand to make the recommendation to Mr. Buras. I must do the sampling that we’re talking about now. It’s not so much a concern, but I have to know it even if I knew it as pure virgin sand before I could tell them to take it off site.
Koury refused to speculate on costs of cleanup from Walk, Haydel’s initial evaluation with no analytical results available. Walk, Haydel’s estimates of cost were: $36,000 to $57,000 for additional site investigations; $72,000 — 140,000 for corrective action plan, confirmation sampling, and supervision of remedial work and site restoration; up to $508,000 for excavation/disposal of non-hazardous waste; and up to $1,470,000 for excavation/disposal of hazardous waste. Koury said it was his impression that costs would not run that high but admitted the expense could be considerable. The plaintiff questioned David Buras regarding the company’s assets. His testimony indicated that in all likelihood the assets would be insufficient to cover a worst case cleanup and restoration cost. Buras also stated that they had begun ex *306 ploring sales possibilities for their large equipment and planned to perform cleanup activities after the site had been cleared.
We believe that the evidence produced by Azby was sufficient to make a prima facie showing of irreparable harm and that the trial judge did not abuse her discretion in granting the preliminary injunction. Furthermore, as SNA was going out of business and would sell its equipment, it was in a position to place its assets out of Azby’s reach, leaving Azby without a collectible judgment. Accordingly, the preliminary injunction and sequestration were justified.

Sequestration of Utility Module

Shell Offshore, Inc. objects to the sequestration on the same grounds that SNA puts forth in opposition to both the preliminary injunction and sequestration.
Having determined that the record supports the issuance of a preliminary injunction and having found that SNA had initiated plans to dispose of its physical assets, we hold that the sequestration was necessary to enforce Azby’s lessor’s lien. At the time suit was filed, Shell had not issued a letter of final acceptance of the utility module, and under its contract title and risk of loss remained with the contractor, Azby. Consequently, the module was covered by the sequestration order.
In this case the assessment of evidence was crucial. Finding no manifest error in the trial judge’s determination of the facts, we affirm the judgment.
AFFIRMED.